NOT FOR PUBLICATION

**FILED**
**JAN 2 8 1998**
**AT 8:30 ___ M**
**WILLIAM T. WALSH**
**CLERK**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CHARLES IADIMARCO, :
:
    Plaintiff, :   Civ. No. 95-5873(GEB)
:
    v. :
:
MARVIN RUNYON, :   **MEMORANDUM OPINION**
:
    Defendant. :

**BROWN, District Judge**

    This matter comes before the Court on defendant's motion for summary judgment and plaintiff's cross-motion for summary judgment. For the reasons set forth in this Memorandum Opinion, the Court will: (1) grant defendant's motion for summary judgment; and (2) deny plaintiff's cross-motion for summary judgment as moot.

**I. BACKGROUND**

    In 1992, the Postal Service underwent a reorganization. In December 1993, job vacancies were posted and postal employees were to submit a 991 form indicating their preferences among the available job vacancies. Postal employees could submit an application for a specific position so long as they were within three EAS levels of the vacancy for customer service positions, and six EAS levels of the vacancy for processing and distribution positions. Plaintiff Charles Iadimarco, a white male, submitted his 991 form indicating a preference for three positions: Manager of In Plant Support at Kilmer (EAS 21), Manager of In Plant Support at Trenton (EAS 21), and Manager of In

1

Plant Support at Monmouth (EAS 19).  *See* Agency Investigative File Exh. 7 (hereinafter "AIF"). At the time, plaintiff was the Director of Operations Services at the former MSC Red Bank with an EAS level of 19.  *See id.*   When the positions for the Kilmer and Trenton jobs were filed by other individuals, plaintiff contacted Robert Towler, the selecting official for the Monmouth job, in February 1993, regarding the Manager of In Plant Support position at the Monmouth plant.  Robert Towler, an African-American male, rated each of the forty-one applications he received for the Monmouth position according to the candidates' knowledge, skills and abilities (hereinafter "KSA") matrix as stated on the applicants' 991 form.  The KSA's for the position were:

(1) Ability to manage the implementation of national and area processing and distribution programs and policies.
(2) Ability to manage the review and evaluation of local operations.
(3) Ability to manage the development of local requirements for resources.
(4) Ability to resolve issues with customers, major mailers, and suppliers.
(5) Ability to provide technical support to post offices.
(6) Ability to manage the work of people to meet organization goals, including organizing and structuring the work, establishing effective work relationships, and facilitating the flow of work-related information.

*See* Certification of Robert W. Beattie Exh. K (hereinafter "Beattie Cert.").  The position of Manager of In Plant Support at Monmouth also included additional duties involving human resource type issues.  *See* Deposition of Charles Iadimarco at 34 (hereinafter "Iadimarco Dep."). Plaintiff and seven other candidates out of a total of forty-one were rated very highly on the KSA matrix, and plaintiff was one of three candidates who rated superior on all of the KSAs.  *See* AIF Exh. 5.  Plaintiff was interviewed by Towler in March 1993, at which point plaintiff claims that Towler informed him that he would be selected for the position of Manager of In Plant Support at Monmouth pending approval by Henry Pankey, Towler's superior.  *See* Beattie Exh. D at 2.

As the placement decisions for the support positions at the Monmouth facility were lagging behind the placement of employees at other facilities, *see* EEOC Hearing Transcript at 125-26, &

164-65 (hereinafter "EEOC Trans."), Towler believed that all of the top candidates for the Monmouth position except for plaintiff were placed into jobs before he was ready to fill the position. *See id.* at 235. Consequently, Towler felt that the position should not be filled by default, *see id.* at 235-39, and thus, on March 25, 1993 and April 1, 1993, Towler requested permission to repost the Monmouth position for a wider area of consideration. *See* AIF Exhs. 10 & 12.

On or about March 25, 1993, plaintiff and Towler discussed the possibility of placing Iadimarco into the position of Operations Support Specialist (EAS 16) in the Monmouth facility. *See* AIF Affidavit B. While plaintiff claims that he did not accept the Operations Support Specialist position, Towler believed that plaintiff had accepted the position, and on March 25, 1993, written approval was sought from Pankey for placing plaintiff into the Operations Support Specialist position. *See* AIF Exh. 11. Plaintiff claims that he instead accepted the position of Operations Support Specialist (EAS 18) in the Trenton facility in early March or April 1993. Around the same time, Towler placed Toni Williams, a female African-American, into a detail to the position as acting Manager of In Plant Support at Monmouth, effective April 5, 1993. *See* EEOC Trans. at 16; AIF Affidavits A & B. On April 19, 1993, Towler request that Pankey approve the appointment of Williams as Manager of In Plant Support at Monmouth. *See* Beattie Cert. Exh. S. On May 3, 1993, Towler formally announced the selection of Williams as the Manager of In Plant Support at Monmouth. *See* Beattie Cert. Exh. T.

On May 28, 1993, plaintiff requested in-house Equal Employment Opportunity (hereinafter "EEO") counseling. After a final interview was conducted with an EEO counselor, plaintiff filed a formal complaint of discrimination on August 31, 1993. Upon the completion of the EEO investigation, plaintiff requested an EEO hearing. Consequently, the case file was forwarded to the

Equal Employment Opportunity Commission (hereinafter "EEOC"), and a hearing was held on January 27, 1995 before EEOC Administrative Law Judge Arthur M. Colby. Judge Colby issued his Recommended Findings of Fact and Conclusions of Law on June 12, 1995, concluding that plaintiff was discriminated against based upon his race and sex when not selected for the Manager of In Plant Support at Monmouth position. The recommended findings were rejected by the agency on August 14, 1995 in a final decision finding that plaintiff failed to establish a prima facie case of discrimination. Plaintiff filed suit in this Court on November 8, 1995.

## II. DISCUSSION

### A. STANDARDS FOR SUMMARY JUDGMENT

Summary judgment may be granted only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In a summary judgment motion, the non-moving party receives the benefit of all reasonable doubts and any inferences drawn from the underlying facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If the non-moving party bears the burden of proof at trial as to a dispositive issue, Rule 56(e) requires him to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324; *Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990). Issues of material fact are genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

1.   Prima Facie Case

In Title VII discrimination cases, the Supreme Court has delineated a three-part, burden of production-shifting analysis.[1] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). In a typical Title VII discrimination case, i.e., where the plaintiff is a member of a protected class, the plaintiff must establish a prima facie case by showing: (1) that he belongs to a protected class; (2) that he was qualified for the position in question; (3) that he was not chosen despite his qualifications; and (4) that others not in his protected class were treated differently. *See id.* at 802-04. A prima facie case creates a presumption of unlawful discrimination. However, the standard applicable to the matter at hand is slightly different from the typical analysis because this action asserts reverse discrimination, i.e., discrimination against plaintiff due to his being a white male. Thus, in a reverse discrimination case, while the three remaining prongs of the prima facie case remain the same, the first prong is modified such that the plaintiff must instead show the existence of "background circumstances supporting the suspicion that the defendant is that unusual employer who discriminates against the majority." *See Davis v. Sheraton Society Hill Hotel*, 907 F. Supp. 896, 899 (E.D. Pa. 1995); *see also Ludovico v. U.S. Healthcare, Inc.*, 1997 WL 288592 *5 (E.D. Pa. 1997); *Daly v. Unicare Corp.*, 1995 WL 251385 *4 (E.D. Pa. 1995); *Sanitate v. Securiguard, Inc.*, 1992 WL 366914 *3 (D.N.J. 1992); *Wallick v. AT&T Communications, Inc.*, 1991 WL 635610 *6 (D.N.J. 1991); *Bhandari v. AT&T, Inc.*, 1990 WL 13099 *4 (D.N.J. 1990).[2]

---

[1] A direct evidence case of discrimination exists when "the evidence the plaintiff produces is so revealing of discriminatory animus that it is not necessary to rely on any presumption from the prima facie case to shift the burden of production." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 778 (3d Cir. 1994). Where, as in the case at bar, there is no direct evidence of discrimination, a plaintiff may still prevail by presenting circumstantial evidence under the burden shifting analysis of *McDonnell Douglas*.

[2] There appears to be a split in the Circuits in reverse discrimination cases as to whether the plaintiff is required to show that the defendant is the unusual employer who discriminates against the
(continued...)

Generally, the evidence that has sufficed to constitute "background circumstances" can be divided into two categories: "(1) evidence indicating that the particular employer at issue has some reason or inclination to discriminate against whites; . . . [and] (2) evidence indicating that there is something 'fishy' about the facts of the case at that raises an inference of discrimination." *See Daly*, 1995 WL 251385 *4 (quoting *Harding v. Gray*, 9 F.3d 150, 153 (D.C. Cir. 1993)).

Plaintiff sets forth the following evidence to show the existence of the requisite background circumstances supporting the suspicion that the defendant is that unusual employer who discriminates against the majority: (1) that plaintiff's qualifications were superior to those of Williams; (2) that both Towler, the selecting official, and Pankey, the concurring official, were African-Americans; and (3) the existence of the December 17, 1992 diversity memorandum issued by Pankey. As a result of this evidence, plaintiff claims that he has met his burden of providing sufficient support to indicate that there is something "fishy" about the facts of this case. However, even when examining the evidence provided in a light most favorable to the plaintiff, Iadimarco is unable sustain his burden of showing the requisite background circumstances.

---

[2](...continued)
majority. *Compare Reynolds v. School Dist. No. 1*, 69 F.3d 1523 (10th Cir. 1995) (requiring the plaintiff in a reverse discrimination case to show that background circumstances supporting the suspicion that the defendant is the unusual employer who discriminates against the majority); *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796 (6th Cir. 1994) (same); *Parker v. Baltimore & O. R. Co.*, 652 F.2d 1012 (D.C. Cir. 1981) (same), *with Hill v. Burrell Communications Group, Inc.*, 67 F.3d 665 (7th Cir. 1995) (declining to require a heightened standard for a plaintiff in a reverse discrimination case); *Wilson v. Bailey*, 934 F.2d 301 (11th Cir. 1991) (same); *Young v. City of Houston*, 906 F.2d 177 (5th Cir. 1990) (same). While the Third Circuit has yet to address this issue, this Court, as well as most of the other courts in this Circuit, have required that in reverse discrimination cases such a showing be made. "Although Title VII certainly prohibits discrimination against a majority group, it makes little sense, within the historical context of the Act, to infer discrimination against the [majority] . . . in the same way that discrimination is inferred against [minorities]." *See Wallick v. AT&T Communications, Inc.*, 1991 WL 635610 *6 (D.N.J. 1991).

First, plaintiff maintains that Iadimarco's qualifications were superior to those of Williams. The Third Circuit has held that "while objective job qualifications should be considered in evaluating the plaintiff's prima facie case, the question of whether an employee possesses a subjective quality . . . is better left to the later stage of the *McDonnell Douglas* analysis." *See Weldon v. Kraft*, 896 F.2d 793, 798 (3d Cir. 1990). "The rational behind this position is that subjective evaluations are more susceptible of abuse and more likely to mask pretext, and thus, they are better examined at the pretext stage than at the prima facie stage." *See Matczak v. Frankford Candy & Chocolate Co.*, ___ F.3d ___, 1997 WL 764904, Slip. Op. at 9 (3d Cir. Nov. 18, 1997). In terms of a reverse discrimination case, some courts have found that evidence of superior qualifications can be sufficient to show the requisite background circumstances. *See, e.g., Harding v. Gray*, 9 F.3d 150, 153 (D.C. Cir. 1993); *Daly*, 1995 WL 251385 *4-5. In the matter at hand, while defendant concedes that plaintiff was objectively qualified for the position, in opposing defendant's motion for summary judgment, plaintiff has failed to present any evidence to show that he was more qualified than Williams. In his brief, plaintiff contends that he "can show [that] he had superior qualifications than Williams." *See* Plaintiff's Brief at 11. In doing so, plaintiff refers the Court to compare his application, William's application, and the job description for the position in question. *See id.* Plaintiff does not, however, explain to the Court how his application exhibits that he has "superior qualifications than Williams." Moreover, from examining the applications, this Court is unable to determine that plaintiff had "superior qualifications." In opposing a motion for summary judgment, the non-moving party may not rely merely on bare allegation, but instead, must set forth the evidence to support his claim or those genuine issues of material fact which are in dispute. However, in the case at bar, plaintiff has failed to do so.

Plaintiff further claims that the testimony of Stuart Gossoff, the Trenton plant manager who eventually hired plaintiff, supports the contention that he was better qualified. *See* Deposition of Stuart Gossoff at 23 (hereinafter "Gossoff Dep."). However, Gossoff was not the decision-maker

in question, and as the Third Circuit has made clear, it is the perception of the decision-maker and not an outsider's view or even the Court's view of an employee's performance or qualifications which are relevant.[3] *See Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 528 (3d Cir. 1992), *cert. denied*, 510 U.S. 826 (1993); *Johnson,* 949 F. Supp. at 1172.

Second, the fact that both Towler, the selecting official, and Pankey, the concurring official, were African-Americans, in and of itself, is insufficient to show background circumstances supporting the suspicion that the defendant is the unusual employer who discriminates against the majority. In claiming that the requisite background circumstances for a reverse discrimination case exist when the decision-makers are African-Americans, plaintiff cites to *Parker v. Baltimore & Ohio R.R.*, 652 F.2d 1012 (D.C. Cir. 1981). In *Parker*, the court determined that the requisite background circumstances existed where the "majority of the [employees] were black, . . . they received an overwhelmingly large proportion of the promotions," and one of the decision-makers was an African-American. *See id.* at 1017. While the *Parker* court did note that one of the decision-makers in that case was an African-American, the *Parker* decision was not based exclusively upon this fact. Rather, it was only one of the circumstances the court examined. In the matter at hand, however, plaintiff is unable to present any other evidence to create a suspicion that the defendant is the unusual employer who discriminates against the majority. In fact, the evidence indicates that Pankey selected predominately white males for the supervisory positions in

---

[3]Moreover, plaintiff has failed to present any evidence that Gossoff interviewed Williams or examined her qualifications such that he could render a valid opinion as to which candidate was better qualified. Plaintiff cites to Gossoff's deposition in which he claims that he believed that Iadimarco was better qualified than Williams for the Monmouth position. *See* Gossoff Dep. at 24. However, in answering one of the previous questions at his deposition, Gossoff testified as follows: "Q: Do you know anything about Ms. Toni Williams' qualifications for the position of Manager In Plant Support in 1993? A: No, I did not." *See id.* at 22. Thus, while Gossoff's testimony conflicts itself and appears to underscore the fact that Gossoff was unfamiliar with Williams' qualifications, it is nevertheless irrelevant as Gossoff was not the decision-maker in question.

Monmouth. *See* EEOC Trans. at 197 ("If you look at the composition of those folks that I selected for plant managers, you see out of the 27 people, . . . and if you broke it down by number -- there was [sic] two females, okay, one Hispanic, I think two, three, four black males and the others were probably all white males."). Thus, out of the twenty-seven plant managers hired, 74% of them were white males. *See Sanitate*, 1992 WL 366914 *3 (finding that at the time of plaintiff's dismissal, approximately 75% of defendant's workforce was white, and thus, plaintiff failed to demonstrate the requisite background circumstances to show that the defendant is the unusual employer who discriminates against white males); *Wallick*, 1991 WL 635610 *6 (holding that where more than 70% of the district managers in the defendant's marketing department were male, both before and after the male plaintiff's termination, plaintiff had failed to support an inference that defendants are among those rare employers that discriminate against males on the basis of sex); *Bhandari*, 1990 WL 13099 *4 (finding that since more than 70% of the managers in defendant's marketing department were male, both before and after plaintiff's termination, plaintiff had failed to show that the requisite background circumstances existed). Thus, the mere fact that the decision-makers were African-Americans is insufficient to create the requisite background circumstances.

Third, plaintiff claims that the December 17, 1992 diversity memorandum issued by Pankey further supports the existence of the requisite background circumstances. On December 17, 1992, a memorandum was sent by Pankey to all plant managers and installation heads. The memorandum states:

> As we proceed to fill vacancies, I want to ensure that very serious consideration is given to the issue of diversity -- I cannot emphasize this point more strongly. The management teams in our plants should reflect the composition of our workforce and communities if we are to benefit from the contributions that minorities, women and ethnic groups can bring to our decision-making processes and the social harmony that this will instill in our work environment.

> Your personal commitment is needed -- if there are any questions on this matter, please feel free to contact me.

*See* Beattie Cert. Exh. B.  However, this memorandum is insufficient to create the suspicion that the requisite background circumstances existed.  The policy of the federal government with regard to hiring is set forth in the Code of Federal Regulations and the Civil Service Reform Act.  This policy states that:

> The Civil Service Reform Act of 1978 clearly states, for the first time, that "it is the policy of the United States . . . to provide . . . a Federal workforce reflective of the Nation's diversity.  The Act establishes in law as the first merit principle that recruitment should be designed to achieve a Federal workforce from "all segments of society."  Among the personnel practices prohibited by the Act is discrimination prohibited under title VII of the Civil Rights Act of 1964, as amended.  Therefore, the Civil Service Reform Act and its directive for a special recruitment program clearly unite requirements for basic Federal personnel policy with requirements for Federal equal employment policy.

5 C.F.R. § 720 App. to Pt. 720 at 13.  It is clear that the December 17, 1992 memorandum merely mirrors the language set forth in the Code of Federal Regulations.  Thus, the existence of such a letter does not create a suspicion of the requisite background circumstances.  Consequently, as plaintiff has failed to set forth sufficient evidence to create a suspicion that the defendant is the unusual employer who discriminates against the majority, plaintiff is unable to set forth a prima facie case of reverse discrimination.[4]  Accordingly, defendant's motion for summary judgment will be granted.

---

[4] Defendant also argues that plaintiff cannot set forth a prima facie case since Iadimarco was not available for the Manager In Plant at Monmouth position as he had already accepted a position at the Trenton plant.  However, as this Court has found that plaintiff is unable to meet the first prong of a reverse discrimination case, and that plaintiff has failed to set forth any evidence such that a reasonable factfinder could infer that defendant's reasons for not selecting plaintiff for the position in question were pretextual, the Court need not reach the issue of whether plaintiff was actually "available" for the Monmouth position.

2. <u>Pretext</u>

Nevertheless, even assuming that plaintiff was able to set forth a prima facie case of reverse discrimination, defendant's motion for summary judgment must still be granted as defendant has articulated a legitimate, non-discriminatory reason for not selecting plaintiff for the position in question, and plaintiff has failed to set forth any evidence such that a reasonable factfinder could infer that defendant's explanation is pretextual.

If the plaintiff succeeds in establishing a prima facie case, the burden of production then shifts to the "employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). The employer can satisfy this burden by introducing evidence which, if taken as true, would permit the conclusion that there was a non-discriminatory reason for the employment decision. *Id.* "The employer need not prove that the tendered reason *actually* motived its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." *Id.* (citing *Burdine*, 450 U.S. at 253, 254, 256). Once the employer fulfills its "relatively light burden" by articulating a legitimate reason for the unfavorable employment decision, the burden of production shifts back to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation is pretextual (thus meeting the plaintiff's burden of persuasion). *Id.*

In order to prevail at trial, a plaintiff must show both that the proffered reason was false *and* that discrimination was the real reason. *Hicks*, 509 U.S. at 515 ("a reason cannot be proved to be a 'pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason"); *Seman v. Coplay Cement Co.*, 26 F.3d 428, 433 & n.9 (3d Cir. 1994) (stating that "[r]ejection of the employer's proffered reasons, without a finding of discrimination, is insufficient to warrant judgment for the employee").

The basic framework for defeating summary judgment when a defendant rebuts a plaintiff's prima facie case with legitimate non-discriminatory reasons for its action was set forth by the Third Circuit in *Fuentes*. A plaintiff must discredit the proffered reason through the submission of "some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; *or* (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764 (citations omitted) (emphasis added). "Thus, if the plaintiff has pointed to evidence sufficiently to discredit the defendant's proffered reasons, to survive summary judgment the plaintiff need not also come forward with additional evidence of discrimination beyond his or her prima facie case." *Id.*

In addressing the quantum of evidence necessary to avoid summary judgment, the Third Circuit has stated that the plaintiff's evidence "must allow a factfinder reasonably to infer that *each* of the employer's proffered non-discriminatory reasons . . . was either a *post hoc* fabrication or otherwise did not actually motivate the employment action."[5] *Id.* (citations omitted) (emphasis in

---

[5] The *Fuentes* court noted that it was not holding that

> to avoid summary judgment, the plaintiff must cast doubt on each proffered reason in a vacuum. If the defendant proffers a bagful of legitimate reasons, and the plaintiff manages to cast substantial doubt on a fair number of them, the plaintiff may not need to discredit the remainder. That is because the factfinder's rejection of some of the defendant's proffered reasons may impede the employer's credibility seriously enough so that a factfinder may rationally disbelieve the remaining proffered reasons, even if no evidence undermining those remaining rationales in particular is available.

*Id.* at 764-65 n. 7.

original). Furthermore, the question is not whether the employer's action was wise or prudent. *See Johnson,* 949 F. Supp. at 1172 ("An employer must be granted substantial discretion to exercise subjective judgment in the rendering of employment decisions"). "To discredit the employer's proffered reason, . . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *See Fuentes,* 32, F.3d at 764; *see also Billet v. CIGNA, Corp.,* 940 F.2d 812, 825 (3d Cir. 1991) ("Barring discrimination, a company has the right to make business judgments on employee status."). "Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action [such] that a reasonable factfinder could rationally find them 'unworthy of credence'[.]" *Fuentes,* 32 F.3d at 765 (quoting *Ezold,* 983 F.2d at 531); *see also Bray v. Marriott Hotels,* 110 F.3d 986, 990 (3d Cir. 1997) ("An inference of pretext may arise if the plaintiff can raise suspicions with respect to the defendant's credibility or the employer's treatment of the employee."). "In simpler terms, [the plaintiff] must show, not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." *See Keller v. Orix Credit Alliance, Inc.,* 130 F.3d 1101, ___ 1997 WL 752158 *10 (3d Cir. 1997) (en banc). "As another court of appeals has put it, 'federal courts are not arbitral boards ruling on the strength of 'cause' for discharge. The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination]." *See id.* *9 (quoting *Carson v. Bethlehem Steel Corp.,* 82 F.3d 157, 159 (7th Cir. 1996)).

13

The Third Circuit has stated that an employee's own view of her performance, or a court's view of an employee's performance, is not an issue to be considered in an alleged discrimination case. What is significant is the perception of the decision-maker. *Ezold*, 983 F.2d at 528; *Johnson*, 949 F. Supp. at 1172. Absent discrimination, a company is privileged to make business judgments on an employee's status, "particularly when the decision involves subjective factors deemed essential to certain positions." *Id.*

Assuming that plaintiff was able to set forth a prima facie case of reverse discrimination, the burden of product would thus shift to defendant to articulate some legitimate, non-discriminatory reason for not selecting plaintiff for the position in question. The employer may satisfy its burden of articulating a legitimate, non-discriminatory reason by introducing evidence which, if taken as true, would permit the conclusion that there was a non-discriminatory reason for the employment decision. *See Fuentes*, 32 F.3d at 763.

The selecting official in this case, Towler, stated that he felt that plaintiff was not the best qualified for the position in question. Specifically, Towler fled that since the position of In Plant Support at Monmouth was also to include added duties which involved human resources type issues, the fact that plaintiff had no experience in human resources was detrimental to his application. *See* Iadimarco Dep. at 34. Moreover, Towler further stated that he did not select plaintiff for the Monmouth position because he did not believe plaintiff was the right person for the job. *See* EEOC Trans. at 216 ("It was a lot of soul searching. It was a lot of recollection. It was some advice from my former boss, some advice from my then current boss. Some interface with my direct reports; combination of things that influence [sic] me to make a decision that Mr. Iadimarco was not right for the plant at that point in time."). Instead, Towler hired Williams because he felt that she was better qualified for the position.

> Toni Williams seemed to be right for the plant at the time. She offered a fresh approach to the work room floor. She offered a fresh approach to the employees out there. I am -- I am -- my MDOs are tough MDOs. They are very tough MDOs. They would be considered the most humanistic of people on [the] surface. I am not viewed as the gentlest person around. Either people have a tremendous fear of me, for some odd reason. I guess they think I'm intimidating.
> 
> The Manager In-Plant was meant to be a buffer. The Manager In-Plant was meant to access those people on the work room floor with the problems that they were having. The true definition of what In-Plant was from the outset was not clear. It became more and more evident as we moved along in this process, that more and more duties and more and more things would fall under that umbrella; more than appeared on the surface. . . .
> A person that had the ability to interface with people, that communicated very well with people, that no problem dealing with people. Had no problem in what operations were out there on the work room floor. . . .
> Q:   You didn't think that Mr. Iadimarco had these qualities?
> A:   I could not recall Mr. Iadimarco having exhibited those qualities when he was there in Monmouth.

*See* EEOC Trans. at 217-18. Thus, as the evidence indicates that Towler, the decision-maker, believed that Williams was more qualified for the Manager In Plant position than plaintiff was, this Court finds that defendant has articulated a legitimate, non-discriminatory reason for not selecting plaintiff for the position in question.

Accordingly, to defeat summary judgment, plaintiff must point to evidence tending to show that defendant's explanation for its employment decision was pretextual. *Armbruster*, 32 F.3d at 782. To establish pretext, plaintiff must point to some evidence to create an inference such that a factfinder could reasonably either disbelieve defendant's legitimate, non-discriminatory reason, or infer that discrimination was more likely than not a motivating or determinative cause of the employment action. This Court, however, finds that plaintiff has failed to make such a showing.

Plaintiff claims that the record contains sufficient evidence from which a factfinder could reasonably disbelieve defendant's legitimate, non-discriminatory reason for not selecting plaintiff for the position in question. Specifically, plaintiff sets forth the following evidence as tending to create an inference that defendant's explanation for not selecting plaintiff was pretextual: (1) the December 17,

15

1992 diversity memorandum; (2) the decision of the EEOC hearing officer; (3) the fact that plaintiff was more qualified than Williams; and (4) the fact that Williams was not added to the pool of applicants before her selection. In order to defeat defendant's motion for summary judgment, "the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action [such] that a reasonable factfinder could rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.'" *Fuentes*, 32 F.3d at 765. However, in the matter at hand, plaintiff is unable to fulfill his burden since plaintiff's evidence does not demonstrate any weaknesses, implausibilities, inconsistencies, incoherences, or contradiction in defendant's proffered legitimate reasons such that a reasonable factfinder could rationally find them "untrustworthy of credence."

First, the mere existence of the diversity memorandum from Pankey does not create an inference of pretext. As previously mentioned, the language set forth in the December 17, 1992 memorandum merely mirrors the language set forth in the Code of Federal Regulations regarding the federal government's policy on hiring. *See supra* at 9-10. The existence of such a memorandum does not demonstrate any weaknesses, implausibilities, inconsistencies, incoherences, or contradiction in defendant's proffered legitimate reasons for not selecting plaintiff for the position in question such that a reasonable factfinder could rationally find them "untrustworthy of credence." *See Ditzel v. University of Med. & Dentistry of New Jersey*, 962 F. Supp. 595, 605 (D.N.J. 1997) (finding that "the fact that [defendant] UMDNJ has an equal employment opportunity program and that [defendant] Vanderkolk supported its goals of achieving broader representation of minorities and women at UMDNJ" was insufficient to establish pretext).

Second, the mere fact the EEOC hearing officer recommended a finding of discrimination does not create an inference of pretext. In deciding a motion for summary judgment, while the Court may review the administrative record, as well as consider new evidence presented by the parties, this Court is not bound in any way by the administrative law judge's determination. Moreover, in opposing defendant's motion for summary judgment, plaintiff may not rely upon the administrative law judge's legal conclusions as evidence of pretext. Instead, plaintiff must set forth the evidence of record to support its contentions, and this Court must examine all the evidence in the record in a fresh light, and make its own determination of whether or not evidence of discrimination exists. *See Cohen v. Austin*, 861 F. Supp. 340, 350 (E.D. Pa. 1994) (citing *Sperling v. United States*, 515 F.2d 465 (3d Cir. 1975), *cert. denied*, 426 U.S. 919 (1976)); *see also Prince v. Commissioner*, 713 F. Supp. 984 (E.D. Mich. 1989). Thus, the mere fact that the hearing officer found that defendant's reasons for not selecting plaintiff were pretextual does not compel this Court to reach the same conclusion.[6]

Third, plaintiff claims that he was more qualified than Williams, and that his not being hired evidences pretext. Plaintiff claims that the testimony of Stuart Gossoff, the manager who did hire Iadimarco, supports the contention that he was better qualified. However, as the Third Circuit has made clear, an outsider's view or a court's view of an employee's performance or qualifications are not issues to be considered in an alleged discrimination case. What is significant is the perception of the decision-maker. *See Ezold*, 983 F.2d at 528; *Johnson*, 949 F. Supp. at 1172. As previously noted, Towler considered Williams to be better qualified for the position of In Plant Manager since Towler believed that plaintiff lacked some of the qualities that were required

---

[6]Interestingly, the final agency decision did not adopt the hearing officer's findings. *See* Declaration of Dorothy Donnelly Exh. I.

for the position. *See supra* at 14-15. Thus, the mere fact that another manager may have found plaintiff to be better qualified is irrelevant.

Fourth, plaintiff claims that the fact that Williams was not added to the pool supports the conclusion that defendant's reasons for not selecting Iadimarco were pretextual. However, an employer's failure to follow its own regulations and procedures is insufficient to support the conclusion that the employer's explanation for the challenged employment action is pretextual. *See Fischbach v. District of Columbia Dept. of Corrections*, 86 F.3d 1180, 1183 (D.C. Cir. 1996); *Johnson v. Lehman*, 679 F.2d 918, 922 (D.C. Cir. 1982).

"To discredit the employer's proffered reason, . . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *See Fuentes*, 32, F.3d at 764; *see also Keller*, 130 F.3d at ___, 1997 WL 752158 *10 ("In simpler terms, [the plaintiff] must show, not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason."). Moreover, "federal courts are not arbitral boards ruling on the strength of 'cause' for discharge. The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination]." *See id.* *9 (quoting *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir. 1996)). Consequently, plaintiff has failed to produce any evidence upon which a factfinder could reasonably infer that the defendant's decision was pretextual. *See Billet*, 940 F.2d at 816 (noting that conclusory allegations of discrimination are insufficient to survive a motion for summary judgment); *see also Carter v. Miami*, 870 F.2d 578, 585 (11th Cir. 1989) ("Conclusory allegations of discrimination, without more, are not sufficient to raise an

inference of pretext or intentional discrimination where [an employer] has offered . . . evidence of legitimate, nondiscriminatory reasons for its actions.").

In evaluating an employment discrimination case, the totality of the circumstances must guide the Court's analysis rather than the strength of each individual argument. The Third Circuit has previously noted that "A play cannot be understood on the basis of some of its scenes but only on its entire performance, and similarly, a discrimination analysis must concentrate not on individual incidents, but on the overall scenario." *Bray*, 110 F.3d at 991.

> The distinct method of proof in employment discrimination cases, relying on presumptions and shifting burdens of articulation and production, arose out of the Supreme Court's recognition that direct evidence of an employer's motivation will often be unavailable or difficult to acquire.

*Sheridan v. E.I. DuPont De Nemours & Co.*, 100 F.3d 1061, 1071 (3d Cir. 1996) (en banc), *cert. denied*, 117 S. Ct. 2532 (1997). Therefore, a "'plaintiff is not required to produce evidence which necessarily leads to the conclusion that the employer did not act for non-discriminatory reasons,'" *Bray*, 110 F.3d at 993 (quoting *Sempier*, 45 F.3d at 728), nor does a plaintiff have to cast doubt on all of the defendant's proffered legitimate reasons. *See Fuentes*, 32 F.3d at 764-65 n.7. Nevertheless, when examining the "overall scenario" in the matter at hand, plaintiff has not presented evidence such that a factfinder could reasonably disbelieve defendant's articulated legitimate reasons or that an invidious discriminatory reason was more likely than not a determinative cause of defendant's actions. In light of the objective evidence presented in the record, no reasonable factfinder could conclude that defendant's articulated reasons for not selecting plaintiff were pretextual. Consequently, defendant's motion for summary judgment will be granted.

## III. CONCLUSION

For the foregoing reasons, the Court will: (1) grant defendant's motion for summary judgment; and (2) deny plaintiff's cross-motion for summary judgment as moot. An appropriate form of Order is filed herewith.

GARRETT E. BROWN, JR., U.S.D.J.